May it please the court, Lawrence Rolfing on behalf of Lorain Stiffler. This is a social security case, SSI, indigent young lady, borderline intellectual functioning. The judge finds that she needs a low-stress work environment, few changes, and no production-paced work. What does it say exactly, few workplace changes? Where does he say that? No, what's the exact language? Okay, yes, Your Honor, the exact language is simple routine tasks in a routine low-stress work environment with few workplace changes. Okay. She cannot perform rapid-paced assembly line work. Okay. That's the dispositive, that's the critical language. The Dictionary of Occupational Titles categorizes many aspects of work activity. One of them is reasoning level, which this court has dealt with several times. It's never dealt with this particular issue. Reasoning level two, which one of the occupations is reasoning level three, the commissioner does not defend that. Reasoning level two is defined in the second sentence as dealing with problems involving a few concrete variables in or from standardized situations. All right, so I thought I was talking about two different things. A variable is something that within the routine daily thing there are different things that happen. Like in the laundry situation, one variable is, you know, whether it's white or colored clothing or whether it has to go in the washer or the dryer or whatever. Those are variables. A workplace change is something different, where one day they decide that the laundry room is somewhere else than it was before. It's a change in the workplace, not a variable within the job. So I don't see that they have anything to do with each other. Well, when we look at the first sentence of the two reasoning levels that are at issue here, reasoning level two is defined as applying common sense understanding to carry out detailed but uninvolved instructions. It's in the detail. The devil is in the details. We contrast that with reasoning level one, apply common sense understanding to carry out one- or two-step instructions. Those are very straightforward. There is little, if any, change in the work setting. The second sentence modifies that and allows for ‑‑ I mean, make it concrete. If somebody is working in a laundry and she has a set of instructions, there are variables, i.e., you know, what does she do with this kind of clothing and what does she do with that kind of clothing, and you have to put the warm on rather than the hot sometimes and things like that. Those are variables. But they're not changes in the workplace or workplace changes. They're changes in the steps that you follow. No, they're not. Well, if we conducted a phase analysis. Variables. They're things, if X, then Y. Right, but the variable tree spreads out. And so a laundry worker carries out detailed but uninvolved instructions and has a few variables. And the variables are ‑‑ I have a mathematical mind, and I see variables as the variables of the thing that change. The variables in change are linguistically synonymous as they are mathematically synonymous. And I would say ‑‑ It's not a workplace change, and that's why I asked you to say exactly what it says. Every time a variable pops up, there is a change. But not in the workplace. That is the nature of a variable. Maybe in the work, but not in the workplace. If that were the case, Your Honor, then the hypothetical ‑‑ Workplace changes. You have a new supervisor. You're changing the location. You're changing the hours. You're, you know, so on and so on. Or changes in work duties. I'm sorry? Minor changes in work duties. Maybe. We're dealing with ‑‑ But this isn't ‑‑ but that's not the same as concrete variables within a job. We're dealing with a woman, Ms. Stifler, as a sub‑80 IQ. And what we may consider to be an insignificant bump in the road, to her is a monumental task to climb over. No, I understand that, but that's a different point. I'm simply ‑‑ I mean, I gather this issue about what does workplace changes and concrete variables has come up a fair amount, and there seems to be case law in both directions about it. That's a separate question from whether she was properly herself treated in this case. Right? I mean, whether there's substantial evidence to support the conclusion, that's a different question. But as to whether this issue about workplace changes and concrete variables in a job, in the work, are the same thing, that's a different ‑‑ that seems to be a recurring issue, and it's not the same as whether she herself could have done this job. It is a recurring issue. It has been percolating in the district courts. There's only one unpublished opinion in this court, which addressed occasional changes in essential job functions, but didn't mention the expected job functions that Gutierrez throws into the mix. Expected job functions is more of the bonafide occupational qualifications. Your Honor, the ‑‑ to the extent that variables and changes are not the same thing, then the place to hash that out and to make that clear is in the administrative law judge decision, and the ALJ didn't do that. The other issue that we presented was the treatment of Coach Chasm's opinion. Dr. Chasm provided a treating source assessment, described a variety of limitations, and all of them are consistent with the findings of the ALJ as I have understood them to be, and also fully explained in his narrative statement on his medical source statement, both with respect to social functioning and with respect to her cognitive capacity to maintain attention and concentration. And the plain statement that it's inconsistent is based upon this pervasive notion that consistent or not consistent, not inconsistent, mean that they're the same. And consistent and not inconsistent do not require perfect symmetry. And on that basis, the court should also reverse and remand. But with respect to the proposition that variables are not changes, I respectfully disagree, Your Honor. Well, if variables are changes, then in both instances it said few. I don't think they're the same thing, but if they were the same thing, then if they're interchangeable words, then he didn't say anything different. He said few workplace changes, and the other thing says a few variables, right? But it doesn't say how often few variables occur. And the entire structure of all of the categories in the DOT is that they are, in essence, hierarchical. And so when the Department of Labor defines reasoning level one as occasional to no variables and describes reasoning level two as having few variables, both of them speaking in the plural, then the reasoning level two is necessarily a step above what's required at reasoning level one. Yeah, that obviously is true. But I guess the question here is we're trying to parse the difference between reasoning level two and the RFC here and the VE testimony. And I guess the question I have is how finely are we parsing this? Because what the case law says is it has to be an apparent difference, has to be at odds with. Have you met that standard here, even if we've identified some possible technical difference between these? I would submit that it is not a technical difference. It is a plain difference. It is a plain difference that may have been overlooked. But there are a, the vocational expert deviance from the DOT is one of the most common bases for remand in the district courts throughout this country. That is just the most common mistake that's made. And I'm just submitting to the court that this is just a slightly different flavor of that same common mistake. And in light of the fact that the courts have dealt with this issue and it's percolated through the district courts for at least the last five years, the commissioner's on notice that this is an issue and it should be addressed in the ALJ decision. Okay, we'll give you two minutes for rebuttal. Why don't we hear from your opposing counsel? Thank you. Good morning. Kasper Chan on behalf of Kilolo Kijikazi, the acting commissioner of Social Security. This case arises out of the ALJ's reasonable evaluation of Dr. Koch-Chasm's medical opinion and claimant's attempt to manufacture a DOT conflict where none exist. Under the deferential substantial evidence standard, this court should affirm the ALJ's decision. Why don't you begin with the conflict issue? Sure. With regards to the DOT conflict issue, there's no obvious or apparent conflict. The RFC here is for few workplace changes and reasoning level two provides for few concrete variables. Here the relevant consideration is the modifier that's used, few. Even if this court disregards the plain language of the modifier few, this court should reject claimant's illogical contention that occasional and reasoning level one addresses the frequency of variables, but for some unknown and unexplained reason, few in reasoning level two addresses the number of variables. Do you think changes in variables are the same or is that different? It's the commissioner's position that the two are synonymous. That what? I'm sorry? That they're the same, variables and changes are the same. Well, changes in variables may be the same, but in context, workplace changes where he says, what he says is, let's see, limited to routine tasks in a routine, no-stress work environment with few workplace changes. That seems so obvious to me that that's talking, it's no-stress work environment with few workplace changes, i.e., the workplace doesn't change. The schedule doesn't change, the supervisor, the location, and so on. It's not talking about the tasks go, or first in essence, routine tasks, in a routine, no-stress work environment with few workplace changes, not few changes in the tasks themselves. I just don't understand. It's not the same thing. Well, what I would note for the court is that it's not just any change or the court's interpreting variables. If somebody is doing laundry and every day she has to decide whether to put, to look at the kind of fabric and decide whether it's hot or warm, then she has to put the washing machine on. Is that a change? Sure. No, it's not. Every day she's doing the same thing, making that decision. The change would be if one day they decide that she has to go and use a different washing machine that she's never used before and learn a whole new technology. That would be a change, a workplace change.  The workplace change or the variables, it has to relate to what's an essential, integral, or expected job function. As Judge Bress noted earlier, this is not something that's obvious or apparent. That's the standard that we're trying to look at here. What is the state? I know we have one unpublished decision on this, and there are district court opinions in the Ninth Circuit going different ways on it. Is that right? Yes, Your Honor. Different district court opinions going different ways on what specifically? Whether change and variable are the same thing, essentially. Yes, there's a split within the district courts as to whether few workplace changes and occasional workplace changes are something that conflict with each other. I would note that Klamath fails to provide any explanation as to why the DOT shifts from frequency to the number of changes. He instead points to the plain language of the reasoning levels. However, Klamath cherry-picks when to apply the plain language. He essentially asked this court to disregard the plain language in the RFC and what is used in the reasoning levels. Next, the ALJ's evaluation of Dr. Koch-Chasm's opinion is supported by substantial evidence. Under the revised regulations, the ALJ properly and reasonably evaluated the factors of supportability and consistency. Here, the important thing to consider is how severe Dr. Koch-Chasm's opinion is. He assessed essentially what were the most extreme limitations that were provided in the checkbox questionnaire. Addressing supportability, the ALJ noted that the doctor did not reference specific objective findings to support the extreme limitations that were assessed. The doctor didn't describe the severity, the frequency, or the duration of claimant symptoms. He didn't describe clinical findings or objective signs. And like in the district court... There was a treatment record, right? I mean, he was treating this person and there were treatment notes. Is that right? Yes, Your Honor. Well, isn't that the usual thing? I mean, presumably you would look at the treatment notes for support. Now, you might say that they don't support it, but that's not really your argument. Your argument seems to be that it had to be on the piece of paper. Well, I think the two issues are sort of intertwined. In this case, our position is additionally that the examination findings are inconsistent with the extreme limitations that are assessed. And when we see that there's this discrepancy between the two, it begs the question, what sort of evidence that's relatively unremarkable supports these extreme limitations? So what's the conflict? I'm sorry? So what is the conflict? What's the conflict? So then we look, you know, when there's that discrepancy, we look... I want to know what the discrepancy is. So the discrepancy that the ALJ identifies is, you know, the unremarkable mental status findings, the activities of daily living, and the improvement with treatment. And given that there's this discrepancy... I mean discrepancy with his own treatment notes. Is there a discrepancy with his own treatment notes? Yes, Your Honor. The mental status findings that Dr. Koshkazm documented, as well as the other providers at Riverside Health where Dr. Koshkazm worked, those mental status findings were generally unremarkable in comparison to the extreme and debilitating limitations that were assessed. And so when we compare those, we have to ask ourselves, you know, how do we reconcile these two? And notably the checkbox form, you know, gives Dr. Koshkazm the opportunity to explain, you know, do you believe the claimant had any cognitive issues? And that there's a specific question that asks him to explain that, and that part is conspicuously absent. And so when we look at sort of the accompanying explanation that Dr. Koshkazm provided, the ALJ reasonably found that this was not supported. I would also note that... I guess I had read the ALJ to be saying that not necessarily that Dr. Koshkazm's opinions were internally inconsistent, but that they were inconsistent with other evidence in the record, including from other providers. Not that the opinion itself is internally inconsistent. It's that the functional limitations that are assessed are inconsistent with the objective evidence, the daily activities, the improvement with treatment, and then that on the supportability side that there's essentially, you know, no meaningful explanation to explain why there are such extreme limitations. Claimant attempts to shift the focus by arguing that Dr. Koshkazm provided an opinion only on cognitive impairments and not her depression, but this contention is simply incorrect. Dr. Koshkazm identifies in the checkbox form that depression is a basis for the impairment. If you look at the treatment records from Dr. Koshkazm, he identifies depression as the primary diagnosis. And the other providers at Riverside Health where Dr. Koshkazm works, they also identify depression as one of the diagnoses. I would note that claimant appears to contradict herself in making this argument. On page 20 of her brief, she admits, according to Dr. Koshkazm, Stifler suffered from a major depressive disorder. Even if this court disagrees, claimant's arguments are red herring when you consider the actual limitations that were assessed. Dr. Koshkazm assessed broad and widespread limitations in each of the categories of mental functioning. When you compare the severity of those limitations with the unremarkable evidence in the record, you can see that opinion is both unsupported and inconsistent. The fact that the doctor didn't explain his opinion is something that this court should note, and the ALJ properly evaluated supportability and consistency. In conclusion, we would ask that this court affirm the commissioner's decision, finding claimant not disabled. Thank you, Mr. Chan. The commissioner's been using the DOT for decades, and the commissioner is now one of two agencies that the Department of Labor continues to publish the DOT for. And so when the commissioner stands before this court and says that, in our experience adjudicating disability claims, variables and changes are synonymous, the court should take the commissioner at her word and treat changes and variables as synonymous. So then explain to me, if that's true, how there's a conflict between few variables and few changes. There isn't a difference between few variables and few changes, but there's a difference between few variables and occasional variables or no variables. But I thought the Level 2 says few variables, no? Right, but it's — And the RFC said few workplace changes. I think this cuts against you, but if you want to accept that, then what's the difference? Few variables is using that as an adjective describing a noun, and occasional or no variables is describing an action. It's describing a process. It's describing a work setting. And to find that Reasoning Level 1 allows a greater level of variables or changes than does Reasoning Level 2 would be to stand the entire DOT on its head. None of the categories in the DOT data set have that kind of — have even an overlap, much less a change. Sedentary work, for instance, is a definition of exclusion. So just to be precise, what is the conflict that you're claiming here? My conflict I'm claiming is that when an individual is limited to less than occasional changes in a work setting or less than occasional variables in a work setting — But that's not what we're dealing with because we're dealing with Level 2. Yeah. Okay. That that limitation only permits a finding that the person is capable of performing Reasoning Level 1 work by definition. If they can't — the district court in Kelsey said — You take few workplace changes to mean Reasoning Level 1. Few changes means Reasoning Level 1, bottom line. Okay. Just one more thing, if I may. No, I understand you're saying that few changes means less than Reasoning Level 1. No, it's with — Reasoning Level 1 is a range, and few changes is the bottom piece of that pie. Coach Chasm says these findings are consistent with her intellectual development disorder, not her depression. That's page 636. Can I ask you, though? I mean, let's assume you're right that the RFC is more consistent with Reasoning Level 1. So then what happens? The ALJ should have heard from the vocational expert about jobs with Reasoning Level 1? Yes. Yes. And allow full cross-examination about the existence of that work, whether or not it requires — whether it's low stress or whether it involves something, a production pace similar to an assembly line. The full panoply is opened up to cross-examination. Is it your belief that if she's limited to Reasoning Level 1 jobs, there are not going to be sufficient jobs in the national economy for somebody with Reasoning Level 1? Not given the range of her impairments. Okay. I have a question. Yes, Your Honor. Counselor, did you make the argument that Reasoning Level 1 should have been considered in your opening brief? Yes. Made it in the opening brief, made it in the district court brief. I have a question in your opening brief. Pages 17, 18, 19, and 20. All right. Let me go again. Pages 17 through 19. I'm sorry, Your Honor, I walked over your voice. I was just saying, let me go there. So is your argument that few changes in the Reasoning Level equates to Reasoning Level 2 but not Reasoning Level 1? A few variables occurring at unspecified frequency is consistent with Reasoning Level 2, but occasional or no variables in the work setting at all is consistent only with Reasoning Level 1. And that is the argument that we made at the second half of the paragraph on page 18. But what is there in the record to support the argument that it's occasional changes as opposed to few changes, that that's supported in the record? Where are you getting that from? Your Honor, the ALJ did not provide a detailed analysis for his limitation in low stress, few changes, no production pace. But that is consistent with an interpolation between Dr. Cush-Casm's report, which the ALJ considered but did not find persuasive, and the opinions of the state agency that did not describe any pace limitation. But the ALJ did find a moderate impairment in concentration persistence and pace, and the limitations described by the ALJ are consistent with that moderate finding. So tell me precisely what in the record dictates a finding of Reasoning Level 1? Dr. Cush-Casm explicitly says that she has no limitations in performing one and two step instructions. But he said she can't work at all. True, but in this Court's jurisprudence on dealing with testimony, the courts have admonished the agency to deal with one limitation at a time or one impairment at a time. And the ALJ may have rejected the limitations, the extreme limitations that are described on page 639, but accepted the moderate and marked limitations that the ALJ, that Dr. Cush-Casm describes on page 638. The judge didn't explain that, but I think that the ALJ certainly had an evidentiary basis. And under Brown v. Kijikazi, the agency cannot attack the ALJ's findings. The agency must defend the totality of the ALJ's findings or agree to send the case back. We've let you go well over your time, but let me see if my colleagues have further questions for you. Judge Berzon? I don't. Okay, thank you. I just wanted to make sure. Thank you. My time to get to the Court continues to expand. Thank you, sir. We appreciate the arguments of counsel. This matter is submitted.
judges: BERZON, RAWLINSON, BRESS